**WINDTBERG & ZDANCEWICZ, PLC**
Post Office Box 51826
Phoenix, AZ 85076-1826
Phone: (480) 584-5660
Fax: (480) 584-5958
courtdocs@wzfirm.com
Michael Zdancewicz - 12426
Marc Windtberg - 24802

Attorneys for Capital One Auto Finance, a
division of Capital One N.A.

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Hilaria Burcham,<br><br>        Debtor.<br><br>Capital One Auto Finance, a division of Capital One N.A.,<br><br>        Movant,<br>v.<br><br>Hilaria Burcham,<br><br>        Respondent. | No. 4:16-bk-09718-SHG<br><br>**Chapter 13 Proceeding**<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br>And<br>**MOTION FOR RELIEF FROM THE CODEBTOR STAY**<br>**Property Description:**<br>2011 Chevrolet Malibu VIN 1G1ZC5E14BF123337<br>**(hereafter the "Collateral")** |

      Capital One Auto Finance, a division of Capital One N.A. (hereafter the "**Movant**" or "**Secured Creditor**") is a secured creditor possessing a lien upon property more particularly described below. Movant contends it is entitled relief from the automatic stay and the Codebtor Stay because the contract secured by the Collateral is in default. Relief is requested under 11 U.S.C. §362(d)(1) and 1301. Movant requests the court to find:

    a.    That cause exists to terminate the automatic stay;

    b.    That cause exists to terminate the codebtor stay;

c. Waiving the fourteen (14) day provision of Bankruptcy Rule 4001(a)(3) that would stay the effectiveness of any Order is appropriate;

d. That any Order lifting the stay will be binding in the event this matter is converted to another proceeding under the Bankruptcy Code; and,

e. That Movant may file an amended proof of claim for any deficiency balance within thirty (30) days of disposition of the Collateral, or by the claims bar date, whichever is later.

The following Memorandum of Points and Authorities support this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(G) and 11 U.S.C. § 362.

2. **Hilaria Burcham** shall be referred to as the **Debtor. Hilaria Burcham and Bryan W. Burcham** executed and delivered to Secured Creditor a contract (hereafter the "**Contract**").

3. Repayment of all amounts due on the Contract is secured with the following described collateral:

**2011 Chevrolet Malibu VIN 1G1ZC5E14BF123337**

(hereafter referred to as the "**Collateral**")

4. Exhibit 1 is a true and correct copy of the Contract and it is incorporated herein by reference.

5. The Secured Creditor's lien on the Collateral is properly perfected. See Exhibit 2: Records from the Arizona Department of Transportation, Motor Vehicle Division reflecting Secured Creditor's lien.

6. Movant is the owner and holder of the Contract and the documents securing repayment of all amounts due.

7. Payments have not been made pursuant to the terms of the Contract.

8. The failure to make timely payments prejudices Secured Creditor.

9. Payments are due under the Contract.

10. Debtor surrendered possession of the Collateral to Creditor.

11. Debtor's plan provides for the surrender of the Collateral (ECF 42 paragraph number 6).

12. There is little or no equity in the Collateral.

13. The amount of the debt as of the date of the filing of this Motion is $30,045.87.

14. The National Automobile Dealers Association ("**NADA**") places the retail value of the Collateral at $8,050.00. See Exhibit 3: Valuation Evidence.

15. Movant is entitled to relief from the Automatic Stay for cause, because payments are not being received in accordance with the Contract.

16. Movant further request the Court waive the provisions of Bankruptcy Rule 4001(a)(3), which would stay the order for relief until the expiration of 14 days after the entry of the order.

## LEGAL ANALYSIS

Pursuant to Bankruptcy Code § 362(d)(1) and 1301, relief from the automatic stay shall be granted "for cause," including, without limitation, lack of adequate protection. *See*, 11 U.S.C. §362(d)(1).

In addition, a party with an interest in property is entitled to relief from the automatic stay if: (i) the debtor lacks equity in the property, *and* (ii) the property is not necessary for an effective reorganization that is in prospect. *See*, 11 U.S.C. § 362(d)(2); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S. Ct. 626, 98 L.Ed.2d 740 (1988).

Movant seeks relief from the Codebtor Stay to allow Movant to exercise its rights in the Collateral.

**A. Sufficient "Cause" Exists to Grant Relief from The Automatic Stay.**

Pursuant to 11 U.S.C. § 362(d)(1), a party-in-interest may be granted relief from the automatic stay for cause. The term "cause" is not defined in the Bankruptcy Code and must be

determined on a case by case basis. *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985) (citations omitted); *see also In re Delaney-Morin*, 304 B.R. 365, 369 (9th Cir. B.A.P. 2003).

     **B.    Termination of the Stay is Appropriate Under 11 U.S.C. § 362(d)(2) Because There is No Equity in the Collateral and There is No Need for the Collateral as part of the Reorganization.**

As alternative grounds for relief from the automatic stay, Movant alleges that there is no equity in the Collateral, and the Collateral is not necessary for an effective reorganization. Pursuant to 11 U.S.C. § 362(d)(2), a party in interest may be granted relief from the automatic stay if: (i) the debtor does not have equity in the property; and (ii) the property is not necessary for an effective reorganization. Once the Movant establishes that there is no equity in the Property, "it is the burden of the debtor to establish that the collateral at issue is 'necessary to an effective reorganization.'" *Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. at 375-376. "What this requires is not merely a showing that if it is conceivable to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization <u>that is in prospect</u>." *Id.* (emphasis original).

## REQUEST FOR RELIEF

For the reasons set forth above, Movant respectfully requests the following:

    A.    That cause exists to terminate the automatic stay;

    B.    That cause exists to terminate the codebtor stay;

    C.    Waiving the fourteen (14) day provision of Bankruptcy Rule 4001(a)(3) that would stay the effectiveness of any Order is appropriate;

    D.    That any Order lifting the stay be binding in the event this matter is converted to another proceeding under the Bankruptcy Code; and

    E.    That Movant may file an amended proof of claim for any deficiency balance within thirty (30) days of disposition of the Collateral, or by the claims bar date, whichever is later.

Dated: <u>August 22, 2017.</u>

| | |
|---|---|
| 1 | |
| 2 | WINDTBERG & ZDANCEWICZ, PLC |
|   | /s/ Michael Zdancewicz (#012426) |
| 3 | Michael Zdancewicz |
|   | Marc Windtberg |
| 4 | Post Office Box 51826 |
|   | Phoenix, AZ 85076-1826 |
| 5 | Attorneys for Capital One Auto Finance, a |
|   | division of Capital One N.A. |

<u>Certificate of Service</u>

I certify that on August 22, 2017, a true and correct copy of the above and foregoing was served upon the following parties by regular first-class mail:

| Dianne C. Kerns | Wayne Mortensen |
|---|---|
| 7320 N. La Cholla #154 PMB 413 | Mortensen Law Offices, PLLC |
| Tucson, AZ 85741-2305 | 1901 E. University Dr., Ste. 360 |
| | Mesa, AZ 85203 |
| Bryan W. Burcham | Hilaria Burcham |
| 1910 S Avenue A, #13B | 6502 E. 42nd St. |
| Yuma, AZ 85364 | Tucson, AZ 85730 |

/s/ Michael Zdancewicz

# EXHIBIT 1

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Deal # ▮▮▮
Stock # ▮▮▮
Dealer Number _____ → Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| HILARIA BURCHAM<br>6502 E 42ND ST<br>TUCSON, AZ 85730 | BRYAN W BURCHAM<br>6502 E 42ND ST<br>TUCSON, AZ 85730 | ORIELLY CHEVROLET INC.<br>6160 E BROADWAY<br>TUCSON, AZ 85732<br>Phone: 520-747-8000 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2011 | CHEVROLET MALIBU | 12 | 1G1ZC5E14BF123337 | ☒ personal, family or household<br>☐ business<br>☐ agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $7000.00 |
|---|---|---|---|---|
| 19.90 % | $ 20491.39 | $ 27898.37 | $ 48389.76 | $ 55389.76 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 672.08 | Monthly beginning 03/08/2011 |

Or As Follows: N.A.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED
1. Cash Price
   - A Cash Price of Motor Vehicle (including accessories, services) $ 30849.00
   - B Sales Tax $ 1342.16
   - C Prior Credit or Lease Balance paid to N.A. $ N.A.
   - D Other Doc Fee $ 299.00
   - E Other _____ $ N.A.
   - F Other _____ $ N.A.
   - G Other _____ $ N.A.
   - H Other _____ $ N.A.
   - Total Cash Price (A through H) $ 32490.16 (1)
2. Total Downpayment =
   - Trade-in 2005 CHEVROLET TRAILBLAZER
     (Year) (Make) (Model)
   - Gross Trade-In Allowance $ 11600.00
   - Less Pay Off Made By Seller $ 11600.00
   - Equals Net Trade In $ 0.00
   - + Cash $ 2500.00
   - + Other REBATE/DPA $ 4500.00
   - (If total downpayment is negative, enter "0" and see prior credit or lease balance, item 1C, above) $ 7000.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) $ 25490.16 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   - A Cost of Optional Credit Insurance Paid to the Insurance Company or Companies.
     - Life $ N.A.
     - Disability $ N.A.
   - B Other Optional Insurance Paid to Insurance Company or Companies $ N.A.
   - C Optional Gap Contract $ 500.00
   - D Official Fees Paid to Government Agencies $ 5.00
   - E Government Taxes Not Included in Cash Price $ N.A.
   - F Government License and/or Registration Fees
     (Identify) $ 399.21
   - G Government Certificate of Title Fees $ 4.00
   - H Other Charges (Seller must identify who is paid and describe purpose)
     - to _____ for _____ $ N.A.
     - to _____ for _____ $ N.A.
     - to _____ for _____ $ N.A.
     - to _____ for _____ $ N.A.
     - to _____ for _____ $ N.A.
     - to GMPP for SERVICE CONT $ 1500.00
   - Total Other Charges and Amounts Paid to Others on Your Behalf $ 2408.21 (4)
5. Amount Financed (3 + 4) $ 27898.37 (5)

If the "Amount Financed" exceeds $25,000 or if the motor vehicle is primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance."

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

### Optional Credit Insurance
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)

Premium:
  Credit Life $ N.A.
  Credit Disability $ N.A.
Insurance Company Name _____
N.A.
Home Office Address _____
N.A.

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance
☐ N.A. _____ N.A. _____
     Type of Insurance      Term
Premium $ N.A.
Insurance Company Name _____
N.A.
Home Office Address _____
N.A.

☐ N.A. _____ N.A. _____
     Type of Insurance      Term
Premium $ N.A.
Insurance Company Name _____
N.A.
Home Office Address _____
N.A.

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____ _____
Buyer Signature          Date

X _____ _____
Co-Buyer Signature       Date

**Returned Check Charge:** You agree to pay a charge of $25.00, plus actual charges assessed by a financial institution, if any check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 72 _____ Mos.
Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X /s/ Hilaria Burcham 01/22/11

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
N.A. _____, Year _____. SELLER'S INITIALS _____

### FOR USED VEHICLES ONLY
The Seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.

**ATTENTION PURCHASER:** SIGN HERE **ONLY** IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:
**ATENCION COMPRADOR:** FIRME AQUI **SOLAMENTE** SI EL VENDEDOR TE HA DICHO QUE EL VEHÍCULO TIENE EL SIGUIENTE PROBLEMA(S) Y QUE USTED ESTA DE ACIERTO DE COMPRA EL VEHICULO BAJO ESTOS TERMINOS:

1. N.A. _____  2. N.A. _____  3. N.A. _____

X _____     X _____
  Buyer Signs    (Date)        Co-Buyer Signs   (Date)

### WARRANTIES
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, except as described above for used vehicles. Making no warranties means that the Seller is selling the vehicle as is – not expressly warranted or guaranteed and without any implied warranties of merchantability (except as described above) or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

☐ IF THE BOX IS CHECKED, THIS CONTRACT IS SUBJECT TO A BROKER FEE PAID BY THE SELLER TO

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

You acknowledge an express intent to grant a security interest in the vehicle and hereby waive and abandon all personal property exemptions granted upon the vehicle, which is the subject of this contract. NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM SUCH PROPERTY EXEMPT FROM PROCESS.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.  Buyer Signs X /s/ Hilaria Burcham  Co-Buyer Signs X /s/ _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**NOTICE TO THE BUYER:** (1) Do not sign this contract before you read it or if it contains any blank spaces. (2) You are entitled to an exact copy of the contract you sign.
**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract, and retain its right to receive a part of the Finance Charge.**

YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE LIABILITY COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.

The Arizona Department of Financial Institutions regulates the Seller and can be contacted at 2910 North 44th Street, Suite 310, Phoenix, Arizona 85018, (602) 255-4421, if you have any complaints concerning this contract.

X /s/ Hilaria Burcham 01/22/2011      ORIELLY CHEVROLET INC. 01/22/2011
  Buyer Signs         Date              Seller Signs             Date
  /s/ _____ 01/22/2011                 By /s/ _____      Title _____
  Co-Buyer Signs      Date

SEE BACK FOR OTHER IMPORTANT TERMS AND AGREEMENTS.

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here N.A. _____ Address N.A. _____

Seller assigns its interest in this contract to _____ (Assignee) under the terms of Seller's agreement with Assignee.
ORIELLY CHEVROLET INC. _____ Assigned with recourse ☐
Seller _____ By _____ Title _____

LAW FORM NO. 553-AZ-ARB (REV. 1/10)
©2010 The Reynolds and Reynolds Company  To ORDER: www.reysource.com, 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR LEGAL COUNSEL.

ORIGINAL LIENHOLDER

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed with a day counted as 1/365th of a year (or 1/366th in a leap year).
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the cost of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract, or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we will subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
      If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      • You do not pay any payment on time;
      • You give us false, incomplete, or misleading information on a credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **Debtor's Liability for Failure to Return Vehicle:** If you are in default, we may send you a notice of default. It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. A notice of default may be mailed to the address on the contract. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming there are no aggravating circumstances, and you have no prior felony convictions, the maximum penalty is 1 year in prison and a $150,000 fine.
   d. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any reasonable collection costs we incur as the law allows.

   e. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   f. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   g. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   h. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

5. **Servicing and Collection Contacts.**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

6. **Applicable Law**
   Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

7. **SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:**
   (a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this contract. In consideration of our agreeing to deliver the vehicle, you agree that if we are unable to assign the contract to any one of the financial institutions with which we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this contract. (c) In the event we cancel this contract, we shall give you notice of the cancellation. Upon delivery of such notice, you shall immediately return the vehicle to us in the same condition as when sold reasonable wear and tear excepted. We agree, upon cancellation of this contract to restore to you all consideration we received in connection with this contract, including any trade-in vehicle. (d) In the event the vehicle is not immediately returned to us upon notice of our cancellation of this contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the vehicle, including attorney's fees, and we shall have the right to repossess the vehicle with free right of entry wherever the vehicle may be found, as the law allows. (e) While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle shall be in full force and all risk of loss or damage in the vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the vehicle while in your possession or control of and until the vehicle is returned to us.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

## GUARANTY

The undersigned, jointly and severally, guarantee payment of all amounts owing under this contract and the payment upon demand of the entire amount owing on this contract in the event of default in payment by Buyer named therein. The undersigned waives notice of performance, demands for performance, notice of non-performance, protests, notice of protests, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing thereunder upon demand, without requiring any action or proceeding against Buyer, and specifically waives any right to require action against Buyer as provided in A.R.S. §§ 12-1641 et seq. The undersigned agree to deliver to Seller or, after assignment, to Assignee timely financial statements and any other information relating to the undersigned's financial condition as may be reasonably requested. The undersigned acknowledges receipt from the Seller, prior to signing below, of a separate "Notice to Cosigner."

| DATED AT | GUARANTOR |
|---|---|
| DATED AT | GUARANTOR |

Marital Community Property Joinder: The undersigned spouse of the Guarantor joins in the execution of this guaranty for the purpose of binding the marital property of the Guarantor, and the undersigned, in accordance with A.R.S. § 25-214 or other applicable law. THE UNDERSIGNED SPOUSE OF THE GUARANTOR ACKNOWLEDGES RECEIPT FROM THE SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

| Date | Spouse of the Guarantor |
|---|---|

## ARBITRATION CLAUSE
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. Arbitration shall be conducted by the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable. Notwithstanding any other provision of this Arbitration Clause, the validity and scope of the waiver of class action rights shall be decided by the court and not by the arbitrator.

Form No. 553-AZ-ARB (7/10)

# EXHIBIT 2

# ARIZONA CERTIFICATE OF TITLE

**ADOT Motor Vehicle Division**
48-7200 R08/15  azdot.gov

Inventory Control: 32772793

| Vehicle Identification Number | Year | Make | Model | Body Style |
|---|---|---|---|---|
| 1G1ZC5E14BF123337 | 2011 | CHEV | | 4DSD |

| First Registered | List Price | Mobile Home Manufacturer | Unit Number |
|---|---|---|---|
| 02/2011 | 022825 | | |

CAPITAL ONE AUTO FINANCE
PO BOX 660068
SACRAMENTO CA  95866-0068

| Title Number | Issue Date | Film Number | Odometer Reading (no tenths) |
|---|---|---|---|
| 004N011067088 | 03082011 | L067004N44 | 0000012  A |

* A - Actual Mileage
* B - Mileage in excess of the odometer mechanical limits
* C - NOT Actual Mileage, WARNING ODOMETER DISCREPANCY

| Previous Title Number | State | Issue Date | Previous Film Number |
|---|---|---|---|
| MCO | | 00000000 | ORIGINAL |

**Arizona Brands**

| Previous Brand | State Previous Brand | State Previous Brand | State Other States With Brands |
|---|---|---|---|

Owners/Lessees

HILARIA  BURCHAM
6502 E 42ND ST                    TUCSON            AZ  857301619   OR

BRIAN WAYNE BURCHAM

Lienholder(s) as of the print date. (Additional liens may exist. Check Lien Motor Vehicle Inquiry on https://servicearizona.com to find all current liens.)

FIRST LIEN-                          LIEN DATE:    01222011
CAPITAL ONE AUTO FINANCE
PO BOX 660068                        SACRAMENTO              CA  958650068

**LIEN RELEASE**

| Lienholder Name | | Acknowledged before me this date. | Notary Public Signature | | |
|---|---|---|---|---|---|
| Lien Amount | Lienholder Signature | Date | County | State | Commission Expires |

VOID WITHOUT EAGLE WATERMARK OR IF ALTERED OR ERASED

# EXHIBIT 3

# N.A.D.A. Official Used Car Guide
# Vehicle Valuation

Print Date: August 16, 2017

Customer: Burcham, Hilaria
File No.: COAF-1019550

Vehicle Description: 2011 CHEVROLET Malibu-4 Cyl. Sedan 4D LT
VIN: 1G1ZC5E14BF123337

## Base Values

Retail: $ 8050.00    Wholesale/Trade-in: $ 5625.00

## Optional Equipment/Adjustments

Estimated Miles    87500    $ 0.00

## Total Adjusted N.A.D.A. Used Car Guide Values

Retail: $ 8050.00    Retail/Wholesale Average: $ 6837.50

Reference  08/2017 Desert Southwest